# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ALPS SOUTH, LLC,         )
a Florida Corporation,      )
                       )
                       )  CASE NO.: 8:08-cv-01893-MSS-MAP
       Plaintiff,        )
                       )
v.                     )
                       )
THE OHIO WILLOW WOOD   )
COMPANY, an Ohio corporation;  )
                       )
       Defendant.       )
_____)

## DEFENDANT THE OHIO WILLOW WOOD COMPANY'S MOTION FOR RELIEF OF JUDGMENT PURSUANT TO RULE 60(b)

The Ohio Willow Wood Company ("OWW") brings this motion to vacate judgment for lack of standing based upon recently discovered assignments to Applied Elastomerics, Inc. ("AEI") of United States Patent No. 6,552,109 ("the '109 Patent"). The '109 Patent was purportedly licensed to Alps South, LLC by AEI in 2008. The problem is this assignment was approximately three years before Mr. John Chen, the named inventor of the '109 Patent, actually assigned the '109 Patent to AEI. This evidence has not heretofore been presented to the Court by either party and only recently became known to OWW. This evidence demonstrates that Alps did not have standing at the time of filing and that it continues to lack standing. OWW is not, by this motion, attempting to reopen prior decisions that resulted from earlier briefing or hearings. Rather, OWW seeks relief pursuant to Rule 60(b)(4) because the Order of Judgment of May 9, 2013 is void due to Alps' lack of standing to sue OWW. As such, there could be no case or

controversy between Alps and OWW, this Court lacked jurisdiction and relief from judgment must be granted.

## I.      Background

According to this Court's prior determinations, Alps obtained standing by acquiring all substantial rights in the '109 Patent from AEI.  (Dkt. Nos. 73, 272).  This Court, OWW, and Alps, were all apparently operating under the premise that AEI had rights of title in the '109 Patent such that AEI could grant rights to Alps.  (See for example the Complaint and Amended Complaints filed in this case in which Alps asserts that AEI was the owner of the '109 Patent. On August 31, 2008, AEI purported to convey to Alps a limited field of use license in the '109 Patent, as memorialized in the 2008 Patent Sale and License Agreement ("Agreement"). (Dkt. No. 31-2)  Alps filed suit against OWW on September 23, 2008.  OWW subsequently moved to dismiss the litigation for lack of standing on October 28, 2009.  Alps executed an amended Agreement *nunc pro tunc* (Amended Patent Sale and License Agreement hereinafter "Amended Agreement") with AEI removing the field of use restriction and filed the Amended Agreement with this Court on February 2, 2010. (Dkt. No. 59).  On February 11, 2010, this Court found that the 2008 Agreement provides Alps with "the substantial rights to proceed . . . ." (Dkt. No. 73, pg. 2, third full paragraph).

Thereafter, in its Order of April 29, 2012, this Court held, in response to Alps' motion for summary judgment regarding OWW's standing affirmative defense, that:

> …on the date this action was initiated Alps had constitutional standing to bring the suit but lacked prudential standing.  The Court found, however, that the prudential standing defect was sufficiently cured with Amended Patent and Sale License Agreement [the Amended Agreement] entered into on January 28, 2010, between AEI and Alps.

(Dkt. No. 272, paragraph spanning pages 11-12).

However, it has now been learned that it was not until September 27, 2011, almost three years after commencement of this suit and well after execution of the Amended Agreement, that John Y. Chen ("Mr. Chen"), the named inventor and original patentee of the '109 Patent, actually assigned his rights and ownership in the '109 Patent to AEI.  In the assignment of September 27, 2011, Mr. Chen covenanted that the "rights, titles, and interests confirmed or conveyed in this Assignment are *unencumbered*" (emphasis added) and made no mention of any rights allegedly conveyed to Alps. (See Exhibit A, last paragraph, pg. 4).  Then, oddly, the next day, September 28, 2011, Mr. Chen executed a second, differently worded assignment to AEI of the '109 Patent.  (See Exhibit B; Exhibits A and B are collectively referred to hereafter as the "September 2011 Assignments").

Notably, neither Alps, who, based upon the Court's prior standing rulings was deemed for all practical purposes to be the owner of the '109 Patent, Mr. Chen, nor AEI ever told OWW or this Court of the September 2011 Assignments. (Dkt. No. 73; 272)  Indeed, OWW deposed AEI, (Mr. Chen was the AEI deponent and AEI was represented at deposition by counsel for Alps), in San Francisco on November 10, 2011.  Prior to that deposition, on October 26, 2011, OWW served upon AEI a subpoena asking for all documents referring or relating to the '109 Patent, already reissued from reexamination.  Neither the September 2011 Assignments nor any other assignment was provided by Mr. Chen or AEI in response to the subpoena.  On the day of the deposition, November 9/10, 2011, a search of the assignment database maintained at the United States Patent and Trademark Office ("USPTO") would have been futile because it was not until two weeks after the deposition and nearly eight weeks after execution that AEI recorded the assignments.  OWW was not informed of the September 2011 Assignments by Mr. Chen or AEI.  Inexplicably, Alps, who by September 2011 had already been found to be in essence the

owner of the '109 Patent and who had all responsibility to the '109 Patent at the patent office, did not tell OWW, or this Court, of the September 2011 Assignments.  OWW only became aware of the September 2011 Assignments after this Court's recent Order of Judgment of May 9, 2013.

## II.    Law and Argument

### A.    The Underlying Judgment Is Void Because This Court Lacks Jurisdiction

"[A] federal court must inquire *sua sponte* into the issue whenever it appears that jurisdiction may be lacking" in an action.  Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000).  As held by the Federal Circuit:

> [a]s a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

Gaia Techs. v. Reconversion Techs., 93 F.3d 774, 780 (Fed. Cir. 1996).

An assignment of a patent, as a matter of law, must be in writing. 35 U.S.C. § 261; Sky Techs. LLC v. SAP AG, 576 F.3d 1374, 1379 (Fed. Cir. 2009) ("The Federal Patent Act requires that all assignments of patent interest be in writing.").  Patents may also be transferred by operation of law as in the case of inheritance.  Akazawa v. Link New Technology Int'l, 520 F.3d 1354 (Fed. Cir. 2008).   In this matter, there was no written assignment of the '109 Patent from the inventor, Mr. Chen, to his company, AEI, until September, 2011.  Moreover, the '109 Patent did not transfer from Mr. Chen to AEI as a matter of law prior to that assignment.

4

While it is true that the face of the original '109 Patent lists AEI, such designation on the face of a patent is "not a conclusive indication" of patent ownership. U.S. Philips Corp. v. Iwasaki Elec. Co., 505 F.3d 1371, 1375 (Fed. Cir. 2007).  Rather, the plaintiff must demonstrate that it is the owner/patentee, assignee, or grantee of the patent-in-suit.  See 35 U.S.C. § 281; Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007); Fairchild Semiconductor Corp. v. Power Integrations, Inc., 630 F. Supp. 2d 365, 370 (D. Del. 2007); LG Display Co. v. AU Optronics Corp., 686 F. Supp. 2d 429, 451-452 (D. Del. 2010).

As plaintiff, Alps "must demonstrate legal title to the patent at the inception of the lawsuit to be entitled to sue for patent infringement." MyMail, Ltd. v. Am. Online, Inc., 476 F.3d 1372, 1375 (Fed. Cir. 2007) (citing Paradise Creations, Inc . v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003)).  However, if the original plaintiff lacks Article III initial standing the suit must be dismissed for lack of jurisdiction. Paradise Creations, Inc., 315 F.3d at 1309.

The September 2011 Assignments evidence that the Agreement and the Amended Agreement between AEI and Alps purporting to transfer an exclusive license from AEI to Alps are void *ab initio* because, at the time of the purported conveyances, AEI did not have any right of title in the '109 Patent and thus, AEI could not confer to Alps that which it did not possess. Unless AEI held the entire interest in the '109 Patent on the date that the Agreement was executed, August 31, 2008, the Agreement could not grant Alps *any* rights in the '109 Patent. Burandt v. Dudas, 528 F.3d 1329 (Fed. Cir. 2008).  Similarly, because the Amended Agreement was executed prior to the assignment of the '109 Patent to AEI, the Amended Agreement could not transfer any rights to Alps either.  Thus, as this Court has stated, Alps could only have standing to sue if the Agreement and the Amended Agreement were effective to convey substantial rights in the '109 Patent. (See Dkt. No. 73).  However, because the Agreement and

the Amended Agreement could not convey any interest in the '109 Patent, since AEI had no interest to convey, Alps did not have standing to bring suit against OWW, and this Court, therefore, lacks jurisdiction.

### i.    The Agreement and the Amended Agreement Are Void *Ab Initio*

In the Agreement and the Amended Agreement between AEI and Alps, AEI asserts "[it] owns and has rights to license certain PATENT RIGHTS" including the '109 Patent. (Dkt. No. 31-2; 59; 62).   AEI's alleged ownership rights in the '109 Patent was the predicate for this Court's Orders. (Dkt. No. 73; 272).   However, it was not until Mr. Chen assigned his rights in the '109 Patent, by way of the September 2011 Assignments, that AEI actually acquired title to the '109 Patent.   Any assertion by AEI that it possessed rights in the '109 Patent on August 31, 2008, the date this lawsuit was filed, is false because it was not until late 2011 that AEI received any rights to the '109 Patent as evidenced by the notarized and recorded September 2011 Assignments.   Accordingly, because AEI did not own or have any right to license the '109 Patent, as it purported to have in both the Agreement and the Amended Agreement, the Agreement and the Amended Agreement are void *ab initio*.   Therefore, on the date this lawsuit was filed, John Chen, not AEI, was the owner of the '109 Patent.

Furthermore, in the September 2011 Assignments to AEI, Mr. Chen represents that the rights, title, and interests conveyed therein were *unencumbered* and that Mr. Chen, the assignor, had the authority to convey those rights, title, and interest in that assignment.   Mr. Chen's September 2011 Assignments were recorded at the United States Patent Office and inform the public (in statements made therein, including the word "unencumbered") that no rights in the '109 Patent were granted to anyone else prior to September 2011.   Therefore, the 2008

Agreement was powerless to transfer any rights to Alps[1].

> **ii.    The September 2011 Assignments Failed To Vest Interest In The '109 Patent To AEI At The Time Of The Agreement And Amended Agreement To Alps**

It is a basic principle of patent law that inventors own their inventions. <u>Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.</u>, 131 S. Ct. 2188, 2199 (2011) (holding that "unless there is an agreement to the contrary, an employer does not have ownership rights in an invention which is the original conception of the employee alone.").  Furthermore, the U.S. Supreme Court in *Stanford* held that "[i]n most circumstances, an inventor must expressly grant his ownership rights in an invention to his employer if the employer is to obtain those rights. <u>Id</u>. at 2195.  The drafter of the September 2011 Assignments that Mr. Chen signed attempts to substantiate AEI's rights in the '109 Patent.  Although the September 2011 Assignments premise some of AEI's alleged prior ownership on theories of "fiduciary duty" (referring to an alleged duty of Mr. Chen to AEI) and "hired inventor" (referring to Mr. Chen allegedly being hired by AEI to invent) neither theory survives scrutiny.

First, Mr. Chen does not have a fiduciary duty to AEI in a closely held private corporation, where the only other shareholder is his wife. <u>Love v. The Mail on Sunday</u>, CV057798ABCPJWX, 2006 WL 4046181 (C.D. Cal. Nov. 16, 2006) (holding that equal shareholders in a corporation do not owe each other fiduciary duties).

Second, Mr. Chen is not an employee hired to invent by AEI; he is an owner/shareholder of AEI. (California Labor Code sections 3351(c) and 4151(a); Testimony of John Y. Chen, Trial Trans. April 30, 2012(b), pg. 44).  And even if Mr. Chen were an employee hired to invent, he would only have an *obligation* to assign his rights to any invention to his employer, AEI. *See*

---

[1] For its part, Alps never recorded its Agreements with AEI which would mean that a subsequent purchaser (after September 2011) for value from AEI who would have been unaware of Alps' alleged license would take superior to, and extinguish, Alps alleged rights by operation of law.   35 U.S.C. 261.

Banks v. Unisys Corp., 228 F.3d 1357, 1359 (Fed. Cir. 2000).  An obligation to assign is not an assignment; legal title to the invention does not automatically pass to the employer in the absence of further legal action on the part of the employer to perfect its title. *See* Gellman v. Telular Corp., 449 Fed. Appx. 941, 944–45 (Fed.Cir.2011) (finding that the "hired to invent" doctrine is entirely equitable creating only an obligation for the employee to assign to his employer and unable to satisfy standing requirements).  As such, assuming further for the sake of argument that Mr. Chen had a fiduciary duty to assign the '109 Patent to AEI, the most AEI would have had prior to September 2011 would be an equitable interest in the '109 Patent - and equitable rights are insufficient to provide standing to bring suit. *See* Id. at 944 (holding that all rights, title, and interest remain in the inventor at such time until any and all assignments are executed necessary to vest interest in an employer).

Mr. Chen finally assigned and recorded all rights to the '109 Patent to AEI in September of 2011, thereby making any allegation that AEI owned title to the '109 Patent before this time a falsity and rendering the Agreement and Amended Agreement void *ab initio*.

### iii.    Assignments Of Parent Patents Are Insufficient To Transfer Rights In Future Continuation-In-Part Patents

The assignment of the patents to which the '109 Patent claims priority were insufficient to transfer rights in the '109 Patent from Mr. Chen to AEI because: (1) the '109 Patent is a continuation-in-part ("CIP") and by law contains new matter; (2) Mr. Chen represented to the USPTO that an assignment "will follow" in the '109 Patent application; and (3) the assignments of the parent patents from Mr. Chen to AEI were insufficient to encompass future CIP applications.

First, the '109 Patent is a CIP of earlier filed patents by Mr. Chen.  These patents include:

1. PCT/US94/04278
2. PCT/US94/07314 now U.S. Patent No. 5,868,597 ("the '597 Patent")
3. Application No. 08/288,690, now U.S. Patent No. 5,633,286 ("the '286 Patent")
4. Application No. 08/581,188, now abandoned
5. Application no. 08/581,191, now U.S. Patent No. 5,760,117 ("the '117 Patent")
6. Application no. 08/581,125, now U.S. Patent No. 5,962,572 ("the '572 Patent")

(See Exhibit D, hereinafter the '597 Patent; the '286 Patent; the '117 Patent; and the '572 Patent

are collectively referred to as "Parent Patents")).

Indeed, Mr. Chen expressly declared in the New Application Transmittal for the

invention titled GELATINOUS ELASTOMER COMPOSITION AND ARTICLES, ultimately

issuing as the '109 Patent, that the application was a CIP.

**1.  Type of Application**
This new application is for a(n)

*(check one applicable item below)*

☐   Original (nonprovisional)
☐   Design
  ☐ Plant

***WARNING:*** **Do not** *use this transmittal for a completion in the U.S. of an International Application under 35 U.S.C. 371(c)(4), unless the International Application is being filed as a divisional, continuation or continuation-in-part application.*

***WARNING:*** **Do not** *use this transmittal for the filing of a provisional application.*

*NOTE:  If one of the following 3 items apply, then complete and attach ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF A PRIOR U.S. APPLICATION CLAIMED and a NOTIFICATION IN PARENT APPLICATION OF THE FILING OF THIS CONTINUATION APPLICATION.*

☐   Divisional.
☐   Continuation.
☒   Continuation-in-part (C-I-P).

(Exhibit C, pg. 2).

"[T]he quintessential difference between a continuation and a continuation-in-part is the

addition of new matter." PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1304 n.3 (Fed.

Cir. 2008) (emphasis added).  The '109 Patent was filed as a CIP because it contains new matter

not common to the Parent Patents and, as such, the '109 Patent required its own assignment.  Mr.

Chen, a patent agent with over 40 years of patent experience knew this, which explains the

September 2011 Assignments.  The Grant section of the September 28, 2011 assignment again clearly evidences Mr. Chen's intent to file the '109 Patent as a CIP:

> NOW, THEREFORE, in consideration of continued employment by Assignee and other good and sufficient consideration, the receipt of which is acknowledged, Assignor
>
> 1.) affirms that he has assigned, in writing, to Assignee all right, title, and interest in subject matter common between the Assigned Patent Rights and their respective parent patents and in the underlying inventions, effective on the date that the the assignment for each corresponding parent patent was recorded in the U.S. Patent and Trademark Office, and
>
> 2.) by this Assignment, does assign to Assignee all right, title, and interest not earlier transferred or assigned in the (a) Assigned Patent Rights, (b) in the underlying inventions, (c) in any and all divisions, continuations, and continuations-in-part of the Assigned Patent Rights, (d) in all reissues, reexaminations, or extensions of the Assigned Patent Rights, and (e) all rights under the International Convention for the Protection of Industrial Property.

(Exhibit B).

Mr. Chen realized the CIPs were not covered by the earlier assignments of the Parent Patents and "does assign to Assignee all right, title, and <u>interest not earlier transferred or assigned</u>" when he executed the September 2011 Assignments to try to remedy the problem. However, this remedial act came too late to save Alps' standing in this suit.

Second, when the application that became the '109 Patent was filed on March 8, 1996, Mr. Chen made the representation to the USTPO he intended to file an assignment.

**8. Assignment**
  ☐ An assignment of the invention to _____
     _____
     ☐ is attached. A separate ☐ "COVER SHEET FOR ASSIGNMENT (DOCU-
        MENT) ACCOMPANYING NEW PATENT APPLICATION" or ☐ FORM PTO
        1595 is also attached.
     ☒ will follow.
  NOTE:   *"If an assignment is submitted with a new application, send two separate letters-one for the application
           and one for the assignment." Notice of May 4, 1990 (1114 O.G. 77-78).*
  WARNING:  *A newly executed "CERTIFICATE UNDER 37 CFR 3.73(b)" must be filed when a continuation-in-part
             application is filed by an assignee. Notice of April 30, 1993, 1150 O.G. 62-64.*

(Exhibit C, pg. 4).

Indicating that an assignment "will follow" conclusively demonstrates that an assignment of the '109 Patent was not executed at that time.  Further, if such an assignment were then in existence, "a newly executed 'CERTIFICATE UNDER 37 CFR 3.73(b)' must be filed when a continuation-in-part application is filed by an assignee." (Exhibit C, pg. 4, Last line "WARNING").  No certificate under 37 CFR 3.73(b) is found in the '109 Patent file history confirming no assignment of the '109 Patent was made at that time.

In addition, although not law, the United States Patent Office Manual of Patent Examining Procedure ("MPEP") states that new assignments are needed for continuation-in-part applications. (MPEP § 306).  However, it has been a long-standing requirement, codified in 35 U.S.C. § 261, that "patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. § 261; Sky Techs. LLC v. SAP AG, 576 F.3d 1374, 1379 (Fed. Cir. 2009) ("The Federal Patent Act requires that all assignments of patent interest be in writing."). Accordingly, as an experienced patent agent, Mr. Chen was well familiar with MPEP § 306 and its requirements to file an assignment of the '109 Patent in the future.  Until September 2011, Mr. Chen failed to file an assignment for the '109 Patent.

Lastly, the assignments of the Parent Patents are insufficient to confer ownership of title in the '109 Patent.  Application No. 08/288,690 was first assigned to AEI on July 14, 1995. (Exhibit G).  The portion of the assignment stating the extent of the rights is shown below:



(Exhibit G).

Application No. 08/256,235 was first assigned to AEI on December 26, 1996, and then assigned a second time to AEI on September 27, 2011. (Exhibits H and A).  Two portions of the 1996 assignment stating the extent of the rights assigned are reproduced below:

X   and in all foreign countries, including all rights to claim priority, in and to any and all improvements which are disclosed in the invention entitled:

*NOVEL, ULTRASOFT, ULTRA-ELASTIC*
*GEL AIRFOILS*

(check and complete (a), (b), or (c))

which is found in

(a) ☐   PCT patent application filed on even date herewith

☐   Express mail label no.: _____
Mailed: _____

☐   To comply with 37 C.F.R. § 3.21 for recordal of this assignment, I, an ASSIGNOR signing below, hereby authorize and request my attorney to insert below the filing date and application number when they become known

(b) X   PCT application serial no. *PCT/US 94/07314* filed on *27.06.96*

(also check (c), if foreign application(s) is also being assigned)

(c) X   and any legal equivalent thereof in a foreign country, including the right to claim priority

and, in and to, all Letters Patent to be obtained for said invention by the above application or any continuation, division, renewal, or substitute thereof, and as to letters patent any re-issue or re-examination thereof

(Exhibit H).

Application No. 08/581,191 was first assigned to AEI on April 4, 1996 (Exhibit E).  Two

portions of this assignment stating the extent of the rights assigned are reproduced below:



(Exhibit E).

Application No. 08/581,125 was first assigned to AEI on April 4, 1996 (Exhibit F).  Two

portions of this assignment stating the extent of the rights assigned are reproduced below:

in and to any and all improvements which are disclosed in the invention entitled:
_ORIENTED GEL AND ORIENTED GEL ARTICLES_

Name of inventor(s) _JOHN Y CHEN_

_(check and complete (a), (b), (c), (d), (e), (f) or (g))_

and which is found in

(a) ☐ U.S. patent application executed on even date herewith

(b) ☐ U.S. patent application executed on _____

(c) ☐ U.S. provisional application naming the above inventor(s) for the above-entitled invention.

    ☐ Express mail label no.: _____

    Mailed: _____

    ☐ To comply with 37 CFR 3.21 for recordal of this assignment, I, an ASSIGNOR signing below, hereby authorize and request my attorney to insert below the filing date and application number when they become known.

(d) ☒ U.S. application no. _08/581,125_
    filed on _DEC 29, 1995_

(e) ☐ International application no. PCT/ _____ /_____

(f) ☐ U.S. patent no. _____ issued _____

    ☐ A change of address to which correspondence is to be sent regarding patent maintenance fees is being sent separately.

    _(also check (g), if foreign application(s) is also being assigned)_

(g) ☒ and any legal equivalent thereof in a foreign country, including the right to claim priority

and, in and to, all Letters Patent to be obtained for said invention by the above application or any continuation, division, renewal, or substitute thereof, and as to letters patent any reissue or re-examination thereof

(Exhibit F).

14

"Construction of patent assignment agreements is a matter of state contract law. <u>Euclid</u> <u>Chem. Co. v. Vector Corrosion Technologies, Inc.</u>, 561 F.3d 1340 (Fed. Cir. 2009).  Mr. Chen is a resident of the State of California and AEI is incorporated in California, and as such California law applies.  California courts have held that the standard is an objective one and does not depend on the parties' subjective intents. <u>Cedars–Sinai Med. Ctr. v. Shewry</u>, 137 Cal. App. 4th 964, 980, 41 Cal. Rptr. 3d 48 (2006) ("California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.") (internal quotations and citations omitted).

Mr. Chen assigned to AEI the '597 Patent; the '286 Patent; the '117 Patent; and the '572 Patent, and recorded the assignments with the USPTO on December 26, 1996, July 14, 1995, April 4, 1996, and April 4, 1996 respectively. (See Exhibits H, G, E, F respectively).  The September 2011 Assignments allege that Mr. Chen had already assigned the common subject matter between the Parent Patents and the '109 Patent due to the written assignments of the Parent Patents. (See Exhibits A and B).  However, as the '109 Patent application and the September 2011 Assignments affirm, the '109 Patent contains new matter. It was Mr. Chen's attempt in the September 2011 Assignments to assign from Mr. Chen to AEI "all right, title, and interest in the [the '109 Patent] and the underlying inventions to the extent not otherwise already transferred." (See Exhibits A and B).  This admission confirms that not all matter in the '109 Patent was assigned to AEI by the Parent Patent assignments.

Indeed, Mr. Chen had already filed the '109 Patent application with the USPTO, on May 3, 1996 <u>before</u> he recorded the assignments of the '597, '117, and the '572 Patents, <u>all which</u> <u>occurred after May 3, 1996</u>.  It is uncontestable that Mr. Chen was aware of the '109 Patent

application, at the time he Assigned the'597, '117, and the '572 Patents to AEI, and as shown above, made no attempt to reference the '109 Patent application, or CIPs for that matter, in those assignments.  If Mr. Chen intended for the rights in the '109 Patent to transfer from himself to AEI at the time he would have include the proper language to do so.

Turning to the assignments of the Parent Patents, each of assignments to AEI for the '597, '572, and '117 Patents share the same form language describing the extent assigned to include "in and to any and all improvements which are <u>disclosed in the</u> invention entitled:" (emphasis added) "NOVEL, ULTRA-SOFT, ULTRA-ELASTIC GEL AIRFOILS"; "ORIENTED GEL AND ORIENTED GEL ARTICLES"; and "GELATINOUS COMPOSITION AND ARTICLES" for the '597, '572, and '117 Patents, respectively. (See Exhibits E, F, and H).  These three forms include language stating "and, in and to all Letters Patent to be obtained for said invention by the above application or in any continuation, division, renewal, or substitute thereof, and as the letters patent any reissue or re-examination thereof." (See Exhibits E, F, and H).  Unlike the above language, the assignment of the '286 Patent is narrower and more restrictive including only the "the full and exclusive right, title and interest to said invention and all Letters Patent of the United States to be obtained therefore on said application or any continuation, division, renewal, substitute or reissue thereof . . . ." (Exhibit G). Moreover, closer examination of the '597 Patent assignment indicates that Mr. Chen fails to designate if he is assigning a full or partial interest further allowing Mr. Chen to retain some rights in the '597 Patent.



(Exhibit H, pg. 5)

Reviewing the contractual language objectively, Mr. Chen chose not to cover any CIPs derived from the Parent Patents, although he clearly knew, as a patent agent himself, what a CIP is, and used CIP in language in the 2011 Assignments.   Because these Parent Patents assignments make no mention of CIPs and expressly use singular language, by the unambiguous wording and objective intent, the assignments of the Parent Patents to AEI cannot be considered to include the '109 Patent.

The assignment language of the '597, '572, and '117 patent assignments to AEI include "all improvements." In the case *Regents Of Univ. Of New Mexico v. Knight*, the court found an assignment agreement to include future CIPs even though the agreement did not mention CIPs. 321 F.3d 1111 (Fed. Cir. 2003).  However, the court was persuaded by the "broad language in the [University's] Patent Policy, the Co-Inventor Agreement, and the Joint Assignments" which included language such as "All staff members who make inventions or discoveries . . . shall disclose all such inventions and discoveries . . . [S]uch inventions and discoveries belong to the University" that led to that court's conclusion. Id. at 119.  Such a provision is clearly intended to obligate an inventor at a University to transfer all inventions or discoveries.  The facts here are clearly distinct.

First, the language set forth in the assignment of the '286 Patent makes no mention of "future inventions," or "improvements" but is merely limited to "said application or any continuation, division, renewal, substitute or reissue thereof . . . ." (See Exhibit G).  Second, the language of the '597, '572, and '117 patent assignments is limited "in and to any and all improvements which are disclosed in the invention".  The '109 Patent is not an improvement of the '597, '572, and '117 Patents - it is a new invention with new matter not previously "disclosed

in the invention" and as such, is not covered by the scope of the '597, '572, and '117 patent assignments.

The '109 Patent contains new matter.  The following chart shows examples of new matter in the '109 Patent:

| Claim Limitations in the '109 Patent | Claims of the '109 Patent where the limitation is found | Supported by the '286, '597, '572 or '117 patent applications? |
|---|---|---|
| SEPTON® 4033 | 7, 9, 10, 11, 12 | No |
| SEPTON® 4045 | 7, 9, 10 | No |
| "5 weight percent solution in toluene at 30° C of about 90 cps" | 4 | No |
| "10 weight percent of about 5800 cps and higher" | 4 | No |
| "mixture of two or more of a  hydrogenated styrene isoprene/butadiene block copolymer(s) comprising poly(styrene-ethylene-ethylene-propylene-styrene)" | 1, 2, 4, 13, 14, 15, 16 | No |
| "mixture of two or more of a  hydrogenated styrene isoprene/butadiene block copolymer(s) with 2-methyle-1,3-butadiene and 1,3 butadiene comprising poly(styrene-ethylene-ethylene-propylene-styrene)" | 3 | No |
| "block copolymer(s) is one or more of a block copolymer of poly(styrene-ethylene-ethylene-propylene-styrene)" | 5 | No |
| "a mixture of two or more poly(styrene-ethylene-ethylene-propylene- | 9, 10, 11 | No |

| styrene block copolymers" | | |
|---|---|---|
| said one or more (i) block copolymers is made from poly(styrene-ethylene-ethylene-propylene-styrene) | 12 | No |

Alps, whose burden it has been to prove standing, is unable to show, for example, that the forgoing are found in the Parent Parents.

## III.    CONCLUSION

The September 2011 Assignments, in their own words, make clear that Mr. Chen was the rightful owner of all of the rights in the '109 Patent until September 27, 2011; today AEI is the rightful owner.  Accordingly, by law, AEI did not have any rights to grant to Alps prior to September 27, 2011. Therefore, the exclusive license between AEI and Alps granting rights in the '109 Patent three years earlier in 2008, and subsequent nunc pro tunc agreement, are void.

In view of these recent developments, OWW respectfully requests this Court to issue a new ruling that Alps does not have substantial right in the '109 Patent and therefore lacks standing in this case.  OWW also respectfully requests that this Court grant OWW relief from final judgment as declared void, relieving OWW of this Court's Orders on monetary damages owed by OWW and the permanent injunction, and to dismiss the case.

Respectfully submitted,

Date:   May 22, 2013                              /s/Jeffrey S. Standley
                                                 Jeffrey S. Standley (Ohio Bar No. 0047248)
                                                 F. Michael Speed, Jr. (Ohio Bar No. 0067541)
                                                 James Kwak (Ohio Bar No. 0066485)
                                                 Michael Stonebrook (Ohio Bar No. 0075363)
                                                 Matthew Upton (Ohio Bar No. 0079198)
                                                 STANDLEY LAW GROUP LLP
                                                 6300 Riverside Drive
                                                 Dublin, Ohio 43017
                                                 Telephone:     (614) 792-5555
                                                 Facsimile:     (614) 792-5536
                                                 litigation@standleyllp.com

                                                 Benjamin H. Hill, III (FBN 094585)
                                                 bhill@hwhlaw.com
                                                 William C. Guerrant, Jr. (FBN 516058)
                                                 wguerrant@hwhlaw.com
                                                 Patrick J. Risch (FBN 0165603)
                                                 prisch@hwhlaw.com
                                                 Hill, Ward & Henderson, P.A.
                                                 101 East Kennedy Blvd., Suite 3700
                                                 Tampa, FL 33602
                                                 Telephone:  (813) 221-3900
                                                 Facsimile: (813) 221-2900

                                                 Attorneys for Defendant
                                                 The Ohio Willow Wood Company

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this the 22nd day of May, 2013.  Any other counsel of record will be served by first class mail.

/s/Jeffrey S. Standley
Jeffrey S. Standley