UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ALPS SOUTH, LLC, a Florida corporation, ) | Case No. 8:08-cv-01893-MSS-MAP |
| Plaintiff, ) | |
| -vs- ) | |
| THE OHIO WILLOW WOOD COMPANY, ) an Ohio corporation, | |
| ) | |
| Defendant. ) | |
| ) | |

**EMERGENCY MOTION OF PLAINTIFF, ALPS SOUTH, LLC, TO HOLD DEFENDANT, THE OHIO WILLOW WOOD COMPANY, IN CONTEMPT OF MAY 9, 2013 INJUNCTION ORDER (DKT. 418)**

Plaintiff, Alps South, LLC ("Alps"), moves this court for an order finding defendant, The Ohio Willow Wood Company ("OWW"), in contempt of this Court's May 9, 2013 Order (Dkt. 418) permanently enjoining OWW, and all of its agents, officers, servants, employees, successors, assigns, attorneys, and all other persons acting in concert or participation with it from making, using, selling, offering for sale, or importing into the United States any product infringing on the claims 1-3, 5, 6, 11, and 12 of U.S. Patent No. 6,552,109 ("'109 patent") from the date of the Order through August 11, 2014. OWW continues to make, sell, and offers for sale products that infringe the above claims of the '109 patent. OWW has also induced or attempted to induce customers who have purchased infringing products from it to sell infringing products. Alps seeks an order holding OWW in contempt of this Court's injunction order, because it is presently making, offering for sale, and selling products with its alleged new gel ("new gel products") that continue to infringe some or all of the asserted claims of the '109

patent, and enjoining OWW from making, using, selling, offering for sale, or importing into the United States new gel products because they infringe the asserted claims of the '109 patent. It further seeks an order enjoining OWW from inducing purchasers of its infringing products to sell any infringing products, as well as any other relief, including costs and attorneys' fees, this Court deems just and equitable.

## MEMORANDUM

### I. INTRODUCTION

OWW has been determined after a two-week jury trial to be **willfully infringing** Alps' '109 patent. This Court has determined the case to be exceptional and has doubled the damage award. On May 9, 2013, this Court also entered an order permanently enjoining and restraining OWW "from making, using, selling, offering for sale, or importing into the United States any product infringing on the claims 1-3, 5, 6, 11, and 12 of U.S. Patent No. 6,552, 109." OWW informed Alps in a letter dated May 13, 2013, and in filing a declaratory judgment complaint in the United States District Court for the Middle District of Florida, of its claim that it no longer makes products that infringe the above claims of the' 109 patent. Based on information provided by OWW, as well as information Alps obtained by other means, it is apparent OWW continues to make and sell products that infringe the '109 patent; its "work around" is nothing more than a transparent attempt to delay implementation of the permanent injunction until the '109 patent expires on August 11, 2014. OWW's so-called new formula so blatantly continues to infringe that OWW's purposeful continued willful infringement is clear. Replacing one SEEPS polymer with another obviously does not avoid OWW's infringement of the '109 patent. OWW is in contempt of this Court's injunction order, because there is no more than a colorable difference between its infringing products and the products that it now

manufactures and sells, which continue to infringe. Moreover, as shown by its news release, OWW is also inducing its customers to sell the very products that were determined to infringe at trial. OWW has consciously flaunted its willful infringement and simply refuses to respect Alps' patent rights and the orders of this honorable Court.

Because of the limited period of time that remains before the patent expires, and because OWW continues to willfully infringe, Alps requests that the Court treat this as an emergency motion, pursuant to Local Rule 3.01(e). This case was filed and 2008, and a jury determined more than one year ago that OWW is willfully infringing the '109 patent. Yet, OWW continues to willfully infringe even now. This is egregiously unfair to Alps and must be stopped.

## II. THE FACTS IN SUPPORT OF ALPS' CONTEMPT MOTION

In a news release OWW issued on May 10, 2013 after this Court issued its May 9, 2013 injunction order (Dkt. 418), OWW asserts that it has "transitioned to selling Alpha Liners and Sleeves containing Advanced Formulas . . . at the beginning of 2013," implying but not actually stating that it no longer infringes the above claims of the '109 patent. See Exhibit 1 attached hereto. It further states that its "customers, both patient-care facilities and distributors, may continue to use and sell fabric-covered products including Alpha Liners they may have in stock that contain Willow Wood's products with previous gel formulations. Alpha Liners using the current Advanced Formulas in both Classic and Hybrid variants were not the subject of the litigation." *Id.* Thus, OWW is manufacturing and selling the same type of gel liner and sleeve products that were found to infringe the above claims of the '109 patent, based on its claim that it has developed new gels that were not the subject of the present litigation. OWW's statements in its press release are also designed to induce customers who purchased infringing products from it to continue to sell those infringing products, in direct violation of this Court's order.

On May 13, 2013, OWW also filed a declaratory judgment complaint, alleging its new gel formulas do not infringe the '109 patent. This case was filed by OWW in the United States District Court for the Middle District of Florida, but it was not assigned to this Court. OWW is apparently attempting to forum shop by not designating its new action as related to this case and by initiating a separate lawsuit. In OWW's new complaint, OWW states that its "Advanced Gel products do not use the particular block copolymer in the claimed ratios of block copolymer to plasticizing oil" and that its Advanced Gel products do not infringe the claims of the '109 patent. These statements are false.

On May 16, 2013, OWW provided the formulas for two variants of its new gels to counsel for Alps. OWW's formulas for its new gels shows that products OWW manufactures and sells with its new gels literally infringe at least claims 1-3 and 5 of the '109 patent. These gel liners and sleeves are composite articles comprised of a thermoplastic, heat formable and reversible gelatinous elastomer composition which are formed into a composite by heat and physically interlocked with a fabric substrate. The gels of the liners and sleeves are formed from 100 parts by weight of one or a mixture of two or more hydrogenated styrene isoprene butadiene block copolymer(s) comprising a poly(styrene-ethylene-ethylene-propylene-styrene) ("SEEPS") and from about 300 to 1600 parts by weight of plasticizing oil. *See* Declaration of Jerry L. Atwood, Ph.D. attached hereto as Exhibit 2 at ¶¶ 5, 13-14. OWW's new gels substitutes a ▬▬, that was the principal block copolymer used by OWW in manufacturing the 13 products found to infringe the '109 patent. Exhibit 3 attached hereto. But substituting ▬▬ does not avoid infringement, because ▬▬ is indisputably a hydrogenated styrene isoprene butadiene block copolymer, and because the gel is still comprised of SEEPS. Moreover, the formula

4

contains ████████, which is indisputably a SEEPS block copolymer. ████████
████████████████████████████████████████████████████████
████████████████████████████████████████

Alps first learned OWW was claiming to have developed a new gel in late 2012. In December 2012, OWW issued a press release touting its new gel and indicating all of its products would be made with the new gel commencing in January 2013. Exhibit 4 attached hereto. Working on the assumption OWW was developing a gel so it could argue that products made with the gel would no longer infringe the '109 patent, Alps tried to find out what it could about OWW's new gel. In doing so, Alps came across a recent OWW international patent application, WO 2012/135839, which has an international filing date of April 2, 2012, in which OWW remarkably claims to have invented a fabric-covered gel liner in which the gel is comprised in part of the Septon J-Series thermoplastic elastomer material and mineral oil. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████

Alps asked Dr. Jerry Atwood, who testified as Alps' expert witness at the trial of this case, to determine if ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████
          ████████████████████████████████████████████
███████████████████████████████████████████████████████.

The infrared spectroscopic test consists of shining infrared light on a sample. The result is a graph showing peaks, which correspond to the absorption of infrared light. While the infrared spectroscopic test cannot directly identify a particular polymer, it creates a "fingerprint," which allows identification by comparing the "fingerprint" to an infrared spectrum of a known polymer. If they match, then the polymers are chemically the same. *Id.* T█████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████   ████████████████████████████████████████
███████████████████████████████████████████████████████

*Id.* Dr. Atwood further concluded to a high degree of scientific certainty that OWW products made with its new gel continue to literally infringe claims 1-3 and 5 of the '109 patent. Atwood Decl. at ¶ 13.

OWW's continued infringement of the '109 patent is confirmed by the formulas it produced on May 16, 2013 concerning the new variants of its gels. As noted above, claims 1-3 required "100 parts by weight of one or a mixture of two or more of a hydrogenated styrene isoprene butadiene block co-polymer(s) comprising a poly(styrene-ethylene-ethylene-propylene-styrene)." ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████

However, even if there is a basis for arguing that ████████ should not be classified as SEEPS, this would not avoid infringement of at least claims 1-3 of the '109 patent. As noted above, ███████████████████████████████████████████

███████████████████████████████████████████ But because Septon 4033 is SEEPS, the gels are still comprised of SEEPS. *Id.* As will be discussed below, the word "comprising" in patent claims requires an open rather than restrictive construction. In other words, while the mixture of two hydrogenated styrene isoprene butadiene block copolymers must contain at least one block copolymer that is SEEPS, the other block copolymer may be something else. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

7



### III. ALPS' MOTION FOR CONTEMPT SHOULD BE GRANTED

In a recent *en banc* decision in *TiVo v. EchoStar*, 646 F.3d. 869, 880 (Fed. Cir. 2011), the Federal Circuit held that an infringer's good faith in undertaking a "design around" and the infringer's claimed intent to avoid continued infringement are not defenses in a contempt proceeding to enforce a permanent injunction against continued infringement of a patent. The Federal Circuit also simplified the procedure and clarified the criteria for enforcing a permanent injunction against an infringer in a contempt proceeding. Before *TiVo*, a district court had to determine first whether a contempt proceeding was an appropriate vehicle to consider post-injunction infringement. To do so, it examined whether the newly accused device is not more than colorably different than the device that had been found to infringe. If the newly accused device was more than colorably different than the infringing device, then the contempt proceeding was inappropriate, and the issue of whether the newly accused device infringes would have to be established in a separate infringement action. *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985). In *TiVo*, the Federal Circuit overruled earlier cases that required the district court to determine first if contempt was an appropriate procedure.

The substantive test for contempt, however, remains the same after *Tivo*, although the Federal Circuit clarified the focus of the analysis. To enforce a permanent injunction enjoining continued infringement of a patent in a contempt proceeding, the patent holder must show by clear and convincing evidence the newly accused device is not more than colorably different from the device that has been found to infringe. If the newly accused device is not more than colorably different than the infringing device, then the court must determine if the newly accused device infringes the same claims of the patent as they were construed in the original infringement case. If the newly accused device is more than colorably different than the infringing device, then the contempt motion should be denied. *TiVo*, 646 F.3d at 881-82.

Although the test remains the same, the Federal Circuit clarified the analysis a district court should undertake to determine whether a newly accused device is not more than colorably different from the device found to infringe. As explained by the Federal Circuit, the analysis should focus

> not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, . . ., but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product. Specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims. Where one or more of those elements previously found to infringe has been modified, or removed, the court must make an inquiry into whether that modification is significant. If those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant. Contempt is then inappropriate.
> *TiVo,* 646 F.3d at 882.

Thus, while "legitimate design-around efforts should always be encouraged as a as a path to spur further innovation," the "assertion that one has permissibly designed around a patent should not be used to mask continued infringement." *Id.* at 883. The need to litigate the issue of whether a modification to a device still infringes the patent at a new trial does not arise unless there is "a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Id.* at 882.

In applying *TiVo* in the present case, it is apparent OWW's modification to the gel composition used to manufacture its fabric covered gel liner and sleeve products since the beginning of 2013 does not avoid literal infringement of at least claims 1-3 and 5 of the '109 patent. The differences between its old formula and its new formula are not significant. At trial, the jury found 13 OWW products infringe each of the asserted claims of the '109 patent. While composite articles comprised of a fabric layer and a gel layer composed of other types of block copolymer and mineral oil were known in the prior art, the composite articles claimed in the '109 patent are unique and nonobvious, because the gel component is formed from one or a mixture of two or more hydrogenated styrene isoprene butadiene block copolymers comprising poly(styrene-ethylene-ethylene-propylene-styrene), i.e., SEEPS, and a plasticizing oil within the range of specified ratios set forth in the claims. At trial, for the jury to find infringement, it necessarily determined OWW's products were composite articles comprised of fabric and a gel that was formed from 100 parts by weight of a mixture of two or more hydrogenated styrene isoprene butadiene block copolymers comprising SEEPS and plasticizing oil within the range of about 300 to about 1600 parts by weight.

Although claim 6, 11 and 12 of the '109 patent claim specific SEEPS block copolymers, Septon 4055 and in some cases Septon 4033, claims 1-3 and 5 do not contain this

limitation. ███████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████

It is apparent the OWW products being manufactured and sold with its new gel formulas are not more than colorably different from the 13 products the jury found willfully infringed the claims of the '109 patent, and OWW's products with the new formula continue to infringe the '109 patent. ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

Even assuming *arguendo* there is some reason why ████████ could not be technically classified as SEEPS, OWW's products made with its new gel formula are not more than colorably different from the products found to infringe, and they literally infringe at least

claims 1-3 of the '109 patent. Taking claim 1 as an example, the gel composition is formed from "(i) 100 parts by weight of one or a mixture of two or more of a hydrogenated styrene isoprene/butadiene block copolymer(s) and (ii) about 300 to 1,600 parts by weight of plasticizing oil." The claim language requires 100 parts of hydrogenated styrene isoprene/butadiene block copolymers, which can be a single block copolymer or a mixture of block copolymers, and which must be comprised of SEEPS. If there is a single block copolymer, it could only be SEEPS. If, on the other hand, there is a mixture of two or more hydrogenated styrene isoprene/butadiene block copolymers, the word "comprising" means that while the mixture must contain SEEPS, it may also contain hydrogenated styrene isoprene butadiene block copolymers that are not SEEPS. "Comprising" is a term of art in patent law. It is generally understood to signify that the claims do not exclude the presence in the accused device of factors in addition to those explicitly recited. *See Amgen Inc. v. Hotechst Marion Roussel, Inc.*, 314 F.3d 1313, 1344-45 (Fed. Cir. 2003) (a "claim reciting 'a widget comprising A and B,' for example, would be infringed by any widget containing A and B, no matter that C, D, or E might be present."); *Row v. Dror,* 112 F.3d 473 (Fed. Cir. 1997).

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████ The proportion required by claims 1-3 of the '109 patent is "100 parts by weight of . . . a mixture of two or more of a hydrogenated styrene isoprene/butadiene block copolymers(s)" [sic] to 300 to 1,600 parts by weight of plasticizing oil. ████████

████████████████████████  ████████████████████████████████

████████████████████████████████████████████████ Consequently, OWW products using the new gel fall within the limitations of at least claims 1-3 of the '109 patent.

OWW is manufacturing and selling products with a new gel formula that is not more than colorably different from the OWW products found to infringe Alps' '109 patent. In terms of what is claimed in the patent, there is no significant difference between OWW's new gels and the gels it used to manufacture the infringing products. **<u>OWW is using its claim of a "design around" to mask continued willful infringement of the '109 patent.</u>**

In addition, as shown in OWW's press release regarding the May 9, 2013 injunction order, OWW has been counseling its customers to infringe Alps' '109 patent. It told these customers that they could continue to sell products made with OWW's old gel formula; products that have been found to infringe the '109 patent. 35 U.S.C. § 271(a) provides that whoever makes, uses, sells, offers to sell, or imports into the United States infringing products is subject to liability as an infringer. Consequently, customers of OWW that use or sell infringing products they purchased from OWW are themselves infringers. Under 35 U.S.C. § 271(b), one who induces infringement is also an infringer. Consequently, OWW's efforts in inducing its customers to continue to sell infringing products is an infringement in violation of the May 9, 2013 injunction order that subjects OWW to sanctions for contempt.

### IV.   CONCLUSION

OWW simply refuses to respect Alps' rights in the '109 patent and is totally disregarding the injunction issued by this Court. OWW has, through Patent Office reexaminations, delays in the judicial process, and now delays in complying with this Court's injunction order, managed to continue to infringe the '109 patent, and its infringement must be

stopped. Alps' motion to hold OWW in contempt of the Court's May 9, 2013 injunction order is well-taken and should be granted. The Court should enjoin OWW, its agents, officers, servants, employees, successors, assigns, attorneys, and all other persons acting in concert or participation with it from making, using, selling, offering to sell, or importing into the United States fabric covered gel products that are made with OWW's new gel formulas, which are described in Exhibit 3 hereto, because those gels continue to infringe at least claims 1-3 and 5 of the '109 patent; enjoin OWW from continuing to induce its customers to infringe the asserted claims of the '109 patent; award Alps its attorneys' fees and costs incurred in bringing this motion; and impose whatever other sanctions the Court deems just and equitable for OWW's contempt of the Court's May 9, 2013 injunction order.

/s/ Ronald A. Christaldi
Ronald A. Christaldi, Esquire
Florida Bar No. 0087025
rchristaldi@slk-law.com
Mindi M. Richter, Esquire
Florida Bar No. 0044827
mrichter@slk-law.com
SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Boulevard, Suite 2800
Tampa, Florida 33602
TEL: (813) 229-7600
FAX: (813) 229-1660
Attorneys for Plaintiff, Alps South, LLC

David W. Wicklund (0012109)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio   43604
TEL:  (419) 241-9000
FAX:  (419) 241-6894
dwicklund@slk-law.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 23, 2013, because Alps' **MOTION FOR CONTEMPT** and the materials supporting it are being filed with the Clerk of the Court under seal, said **MOTION** and the exhibits thereto, were served by email and United States Mail on the following attorneys for Defendants: Patrick J. Risch, Esquire, Hill, Ward & Henderson, P.A., 101 East Kennedy Boulevard, Suite 3700, Tampa, Florida 33601-2231 and Jeffrey S. Standley, Esquire, F. Michael Speed, Jr., Esquire, and Michael Stonebrook, Esquire, Standley Law Group LLP, 6300 Riverside Drive, Dublin, Ohio 43017.

/s/ Ronald A. Christaldi
Ronald A. Christaldi
SHUMAKER, LOOP & KENDRICK, LLP

Attorneys for Plaintiff,
ALPS South, LLC