**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ALPS SOUTH, LLC,
a Florida Corporation,

    Plaintiff,

v.                              CASE NO.: 8:08-cv-01893-MSS-MAP

THE OHIO WILLOW WOOD
COMPANY, an Ohio corporation;

    Defendant.
_____/

**THE OHIO WILLOW WOOD COMPANY'S REPLY IN SUPPORT OF MOTION FOR
<u>RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b)</u>**

Prior to the trial of this case, Alps *repeatedly* attested to this Court and OWW that the '109 Patent had been assigned by John Chen to his company Applied Elastomerics Inc. ("AEI") and then subsequently licensed by AEI to Alps in 2008. Assignment documents for the '109 Patent, executed by John Chen in 2011 and recorded with the United States Patent and Trademark Office ("USPTO") shortly thereafter, show otherwise. The fact that John Chen recorded the "unencumbered" 2011 assignments with the USPTO imports a presumption of validity to the assignments that Alps must sufficiently rebut: Alps has failed to do so. *See SiRF Technology, Inc. v. International Trade Com'n*, 601 F.3d 1319, 1328 (Fed. Cir. 2010).

I. **Alps has Failed to Show that the '109 Patent was Assigned by John Chen via its Alleged Incorporation by Reference into another Patent Application which John Chen Assigned to AEI in 1999**

In its Order granting OWW leave to file this Reply in Support of its Motion for Relief from Judgment, the Court indicated it was interested in OWW's Reply to Alps' argument that Mr. Chen assigned the '109 Patent to AEI in February of 1999 when he executed an assignment for a PCT Application/U.S. National Stage Entry which incorporates the '109 Patent by reference. Respectfully, Alps' argument fails because it relies on accepting the unfounded proposition that the written assignment of a host document may affect the transfer of legal title to documents that are incorporated by reference therein and because it misconstrues the actual language of the assignment document at issue.

On February 3, 1999, Mr. Chen executed an "Assignment of Invention Contained in PCT Application" for his PCT application/U.S. National Stage Entry application entitled "Novel Crystal Gels Useful as Dental Floss with Improved High Tensile and Resistance to High Stress Rupture Properties." Dkt. No. 444-6. The Application for which the assignment was executed, and which ultimately issued as U.S. Patent No. 6,161,555, is a continuation-in-part of a

1

continuation-in-part of the '109 Patent. Dkt. No. 444-7. Alps alleges that the '555 Patent incorporates the '109 Patent and its application by reference and that Mr. Chen's assignment of the '555 Patent and its application ("the '555 Assignment") in 1999 was sufficient to assign legal title to the invention of the previously filed '109 Patent from Mr. Chen to AEI.

Alps' argument that the '555 Assignment transferred legal title of the '109 Patent from Mr. Chen to AEI relies on inappropriate utilization of incorporation by reference. Incorporation by reference is a legal tool by which the contents of a second document may be considered included within another document (the "host document") by adequately referencing the second document. *Harari v. Lee*, 656 F.3d 1331, 1334 (Fed. Cir. 2011) provides the correct standard for determining whether a patent application incorporates the material of a second document by reference, but there is no support for Alps' proposition that assigning the invention of a host document affects legal title to the documents and patents that are incorporated therein. The law is clear that incorporation by reference "does not convert the invention of the incorporated patent into the invention of the host patent." *SanDisk Corp. v. Kingston Technology Co. Inc.* 695 F.3d 1348 (Fed. Cir. 2012).

Even more worrisome is the precedent Alps' argument is attempting to establish. Mr. Chen commonly incorporates the work of others by reference into his patents and patent applications. For example, the '555 Patent (available at Dkt. No. 444-7) incorporates by reference at least the following publications: (i) "Expanded Plastics and Related Products", Chemical Technology Review No. 221, Noyes Data Corp., 1983, (ii) "Applied Polymer Science", Organic Coatings and Plastic Chemistry, 1975 (col. 4, ll. 35 – 41), (iii) Shell Chemical Company Technical Bulletin SC:1102-89 (April 1989) "KRATON THERMOPLASTIC REBBERS IN OILS GELS" (col. 15, ll. 21 – 25), (iv) The report of the committee on Magnetic

2

Materials, Publication NMAB-426, National Academy Press (1985) (col. 16, ll. 21 – 23), and (v) volumes 6 and 7 of *ENCYCLOPEDIA OF POLYMER SCIENCE AND ENGINEERING*, 1987 (col. 17, ll. 20 – 24). Alps' argument that assigning the ownership of a patent that incorporates the material of other documents by reference results in an assignment of the incorporated references would mean that the ownership of all of the above documents has also been assigned to AEI. Alps' position is nonsensical. One can imagine the chaos that would occur at the USPTO if companies hear that they can obtain rights to their competitor's patents by obtaining a patent which incorporates those patents by reference.

Alps' argument also fails in this case because it is inconsistent with the language utilized by the '555 Assignment which only assigns the inventive improvements, more specifically, the improved dental floss inventions. *See* Dkt. No. 444-6. The term "improvement" has a well understood meaning in the context of patents and patent applications. *See* 35 U.S.C. § 101. Similarly, Black's Law Dictionary correspondingly defines an "improvement" as "an addition to, or modification of, a previous invention or discovery, intended or claimed to increase its utility or value." Black's Law Dictionary, 757 (6th ed. 1990). The '555 Patent makes clear that its invention is an improved dental floss. For example, claims 1 through 8 of the '555 Patent recite, in relevant part, an "improved dental floss…" *See* Dkt. No. 444-7 at claims 1 through 8. The specification of the '555 Patent repeatedly refers to the dental floss invention and specifically references the "improved dental floss" discovery. *See* Dkt. No. 444-7 at Col.1, ll. 43-45; Col. 2, ll. 1; Col. 5, ll. 44 – 45; col. 8, ll. 53 – 57; Col. 18, ll. 33 – 35.

The invention of the '109 Patent does not qualify as an improvement disclosed in the '555 Application assigned by John Chen to AEI. In particular, there is no dispute that the invention of the '109 Patent was lodged with the USPTO at least as early as March 8, 1996 when

3

John Chen filed United States Patent Application Serial No. 08/612,586. *See* Dkt. No. 444 at p. 10 where Alps concedes these facts. The '555 Application was not filed with the USPTO until the much later date of February 3, 1999. *See id.* Accordingly, the invention of the '109 Patent is not an improvement disclosed therein, but is instead a previous invention of Mr. Chen's that was disclosed in the '586 Application filed in 1996. Further, the invention of the '109 Patent is not an improved dental floss. The '555 Assignment does not provide – as is suggested by Alps – that anything disclosed within the written description of the '555 Application is to be assigned by Mr. Chen to AEI. *See* Dkt. No. 444-6 at page 7 of 8. The '555 Patent clearly pertains to dental floss inventions. Because the '555 Assignment only assigns "improvements disclosed in the invention entitled Novel Crystal Gels Useful as Dental Floss…" and the '109 Patent cannot be considered such an improvement, Alps' argument that the '555 Assignment transferred legal title of the '109 Patent to AEI fails.

A patent is a creature of federal statue and may be transferred only according to the terms of the Patent Act.

> An assignment of a patent must be in writing to fulfill the requirements of the federal statute, and though no particular form of words is required, the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent; it must express intention to transfer ownership.

5 Lipscomb's Walker on Patents, Title § 19:7 (3d ed. 1986); *See Quantum Corp. v. Riverbed Technology, Inc.*. C 07-04161WHA, 2008 WL 314490 (N.D. Cal. Feb. 4, 2008); *Enzo APA & Son, Inc. v. Geapag AG*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998). The '555 Assignment does not show a clear and unmistakable intent on Mr. Chen's behalf to part with the '109 Patent as is required.

4

**II. Nor Has Alps Shown that the '109 Patent was Assigned by John Chen to AEI when Mr. Chen Executed Assignments of its Parent Patent Applications**

    **A. Alps' Arguments Regarding the Alleged Assignment of the '109 Patent through its Parent Applications are Unfounded in Fact**

As an initial matter, it should be recognized that the USPTO itself requires all continuation-in-part ("CIP") applications to have their own assignment. MPEP § 306. In fact, this requirement is set forth directly on the assignment forms (37 CFR 3.73(b) Certificates) as a "WARNING" to applicants to ensure that they follow proper procedure. (Dkt. No. 426-3, Exhibit C to Motion, at p. 4). Mr. Chen, a registered patent agent, is certainly aware of the need to file a new assignment for a continuation-in-part application having filled out many Certificates for his patent portfolio, and having indicated on the '109 application that an assignment document "will follow". *Id.* For Alps to blatantly disregard this requirement of the USPTO, and argue that a separate assignment for the continuation-in-part '109 patent was not necessary, shows just how much confusion Alps is willing to interject in order to find a basis for standing.

The arguments Alps has provided in response to why the '109 patent allegedly did not need its own assignment misrepresent the basic facts of this case and are misleading on the law. For example, Alps provides to the Court that, in *MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1276 (Fed. Cir. 2011), the assignment of a parent application assigned an invention in a subsequent patent. *See* Dkt. No. 444 at p. 7. But Alps fails to inform the Court that the language of the assignment at issue in *MHL TEK* was key to the Court's analysis. In contrast, the patent assignments executed by John Chen for the Parents of the '109 Patent are specifically limited. *See* Assignment Documents which were filed at Dkt. Nos. 426-5, 426-6, 426-7, and 426-8. The assignments of the '109 Patent's parent applications specifically enumerate the types of patents which are being assigned and do not assign continuation-in-part applications such as the '109 Patent.

### B. The Parent Applications to the '109 Patent Do Not Disclose All that is Recited by the Claims of the '109 Patent

Alps recognizes that in order to determine if the assignment of a parent application assigned the invention claimed in a later patent, a comparison must be made between the claims of the patent and the written description of the parent application. *MHL TEK, LLC*, 655 F.3d at 1276. Furthermore, the scope of *all* of the claims must be supported by the written description of the parent application, since it is the patent, not individual claims, that are assigned. See *Lucent Technologies Inc. v. Gateway, Inc.,* 509 F. Supp. 2d 912, 923 (S.D. Cal. 2007) <u>aff'd</u>, 543 F.3d 710 (Fed. Cir. 2008) ("a patentee can not split up ownership of an existing patent by assigning separate claims to different parties"). Therefore, if even one claim is not supported then the earlier assignment cannot cover the later application.

#### 1. None of the Parent Patents Disclose Two or More of a Hydrogenated SIBS Comprising SEEPS, Which is Therefore New Matter

The claims of the '109 patent recite a "mixture of two or more of a hydrogenated styrene isoprene/butadiene block copolymer comprising poly(styrene-ethylene-ethylene-propylene-styrene)" (Claims 1, 2, 4, 13, 14, 15, 16) or a variation thereof (Claims 3, 5, 9, 10, 11, and 12). (Dkt. No. 426-4). Alps argues that this language is not a limitation that should be included in an analysis of the '109 claims as compared to the parent application specifications because "this language is optional." (Dkt. No. 444 at p. 9). Alps' argument is misleading since the analysis requires a comparison of the <u>scope of the claims</u> to the parent applications' specifications. This is not an infringement analysis, but a <u>new matter</u> analysis. Furthermore, contrary to Alps' position, the test is not whether the specification of the '286 *precludes* the option of having two hSIBs comprising SEEPS (nor has Alps provided case law showing that this is the analysis), but whether it *discloses* the option, and Alps has cited no case law to the contrary. None of the written descriptions of the patent applications disclose the use of more than one hSIBS

comprising SEEPS. The disclosure of two hSIBS comprising SEEPS is new matter in the '109 application, and is merely one reason why the '109 patent requires its own assignment.

### 2. SEPTON 4045 and SEPTON 4033 are Not Disclosed in the Parent Applications, and Therefore is New Matter

Claims 7, 9, and 10 of the '109 patent include SEPTON® 4045 as a source of block copolymer. (Dkt. No. 426-4 at pp. 18 – 19). Septon® 4045 is not disclosed in any of the parent applications, and Alps has not asserted that it is. In fact, Alps has completely skirted the issue, and its silence must be construed as acquiescence that, indeed this is new matter. Claims 7, 9, 10, 11, and 12 include SEPTON® 4033 as a source of block copolymer. (Dkt. No. 426-4 at pp. 13, 18 – 19). Septon® 4033 is not disclosed in any of the parent applications, and similar to Septon® 4045, Alps has made no attempt to argue otherwise. Septon® 4033 and 4045 are new matter.

### 3. Additional Limitations of Claim 4 of the '109 Patent are Not Disclosed by the Parent Applications and Therefore Constitute New Matter

As identified by OWW in its 60(b) motion, Claim 4 recites that the block copolymer has a viscosity value at "5 weight percent solution in toluene at 30°C of about 90 cps" and higher which corresponds to a viscosity at "10 weight percent of about 5800 cps and higher". (Dkt. No. 426-4 at p. 18). Neither of these properties recited in Claim 4 are disclosed in the parent applications, and Alps has made no attempt to argue otherwise. These limitations constitute new matter and, like those limitations discussed above, are the reasons why the '109 patent cannot be covered by an assignment to its parent applications.

### C. Mr. Chen's Assignment of the '109 Patent to AEI Must be in Writing

While a license to a patent may be oral such that the licensee has standing to sue if the patentee is joined, assignments and exclusive license agreements which are virtual assignments

7

must be in writing. *Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358 (Fed. Cir. 2003). As explained by the Federal Circuit:

> Under 35 U.S.C. 261 applications for patent, patents, or any interest therein shall be assignable in law by an instrument in writing. If we were to expand the exception to include verbal licenses, the exception would swallow the rule. Parties would be free to engage in revisionist history, circumventing the certainty provided by the writing requirement of section 261 by claiming to be patentee by virtue of a verbal licensing arrangement. *Enzo APA*, 134 F.3d 1090 (Fed. Cir. 1998).

Such a revisionist history is exactly what Alps is attempting to accomplish by asking the Court to find that Mr. Chen at least granted AEI an implied exclusive license "which transferred substantial rights to AEI sufficient to create Article III constitutional standing before AEI entered into the Patent Sale and License Agreement in 2008 with Alps." *See* Dkt. No. 444 at p. 12. Notably, ALPS does not provide any elucidation as to the terms of the exclusive license. For example, in the alleged implied license to AEI was there a right to sublicense? Licenses are limited and personal unless specifically stated otherwise. *See In re CFLC, Inc.*, 89 F.3d 673, 679 (9th Cir. 1996); *Gilson v. Republic of Ireland,* 787 F.2d 655, 658 (D.C.Cir.1986) (Friedman, J.). *See also Stenograph Corp. v. Fulkerson,* 972 F.2d 726, 729 n. 2 (7th Cir.1992) ("Patent licenses are *not* assignable in the absence of express language."); *PPG Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090, 1093 ("It has long been held by federal courts that agreements granting patent licenses are personal and not assignable unless expressly made so."). In the hypothetical implied exclusive license, AEI did not have the right to sue for past damages as those rights must, like assignments themselves, be reduced to writing. *Moore v. Marsh,* 74 U.S. 515, 522 (1868) ("[I]t is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment."); *see also*, *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010). Other questions

remain as well: when did the license begin and what were the termination conditions for its ending? What happened to the license if Mr. Chen sold his patents during the license term? ALPS does not have the answers to these or any other questions as to what the supposed terms were to AEI's implied license.

In essence, Alps' argument defeats itself. In particular, Alps argues that the implied license from John Chen to AEI made AEI "an exclusive licensee of all substantial rights [in] the '109 Patent." Dkt. No. 444 at p. 14. The Federal Circuit refuses to exclude such assignments from the requirement that they be in writing. *Waymark Corp. v. Porta Systems Corp.*, 334 F.3d 1358 (Fed. Cir. 2003). Accordingly, this case is critically distinguished from each of the cases cited by Alps which involve exclusive patent licenses that were <u>not</u> being put forth as an assignment. Alps' title to the '109 Patent is clearly dependent on John Chen's <u>assignment</u> of the '109 Patent to AEI. Alps cannot overcome the fact that the assignment must have been in writing – an act which did not occur until September of 2011.

### III. CONCLUSION

Because it was not until September of 2011 that Mr. Chen assigned the '109 Patent to AEI, AEI did not have title to the '109 Patent in 2008 when it executed the license agreement with Alps. Because Alps did not have standing to sue when this case was filed, the judgment entered against OWW is void and should be vacated and this case dismissed.

Date: October 30, 2013

Respectfully submitted,

<u>/s/ F. Michael Speed, Jr.</u>
Jeffrey S. Standley
F. Michael Speed, Jr.
Michael Stonebrook
**STANDLEY LAW GROUP LLP**
6300 Riverside Drive

9

Dublin, Ohio 43017
Tel.: 614-792-5555
Fax: 614-792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com
mstonebrook@standleyllp.com
litigation@standleyllp.com

Benjamin H. Hill, III
Florida Bar No. 094585
William C. Guerrant, Jr.
Florida Bar No. 516058
Patrick J. Risch
Florida Bar No. 0165603
HILL WARD & HENDERSON P.A.
101 East Kennedy Blvd., Suite 3700
Tampa, FL 33601-2231
(813) 221-3900
(813) 221-2900 (Fax)
bhill@hwhlaw.com
wguerrant@hwhlaw.com
prisch@hwhlaw.com

COUNSEL FOR
DEFENDANT/COUNTERCLAIMANT,
THE OHIO WILLOW WOOD COMPANY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been electronically filed through the Court's CM/ECF system, which will send notification of such filing to registered counsel electronically, on this 30th day of October, 2013.

/s/ F. Michael Speed, Jr.
An attorney for Defendant
The Ohio Willow Wood Company